FILED
APR 17 2007
CLERK
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 02-50653-ASW |
| Guiseppe Enzo Cecconi, | Chapter 304<br>Ancillary Proceeding |
| Debtor. | |
| Sarah Cecconi, | |
| Plaintiff, | Adversary Proceeding<br>No. 03-5024 |
| vs. | |
| Guiseppe Enzo Cecconi,<br>A.C. Spicer, Trustee in Bankruptcy<br>(under U.K. insolvency laws), | |
| Defendants. | |
| A.C. Spicer, Trustee in Bankruptcy<br>(under U.K. insolvency laws), | |
| Counter-Claimant, | |
| vs. | |
| Sarah Cecconi, | |
| Counter-Defendant. | |
| A.C. Spicer, Trustee in Bankruptcy<br>(under U.K. insolvency laws), | |
| Cross-Complainant, | |
| vs. | |
| Guiseppe Enzo Cecconi, | |
| Cross-Defendant. | |

MEMORANDUM DECISION AFTER TRIAL

MEMORANDUM DECISION
AFTER TRIAL

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Before the Court is Plaintiff Sarah Cecconi's ("Sarah")[1] complaint against Guiseppe Enzo Cecconi ("Enzo") and A.C. Spicer, Trustee in Bankruptcy (under U.K. Insolvency Laws) ("Trustee") and Trustee's related counterclaim and cross-claim. Sarah seeks a determination that the house and property located at 3190 Del Ciervo Drive, Pebble Beach, California (the "Property") are her sole and separate property. Trustee seeks a determination that Enzo holds a community property interest in the Property.

The matter has been tried and submitted for decision. Sarah is represented by Paul S. Avila, Esq. and Elaine M. Seid, Esq. of McPharlin, Sprinkles & Thomas LLP. Enzo is represented by Patric J. Kelly, Esq. of Adleson, Hess & Kelly. Trustee is represented by Mary Jo Shartsis, Esq. and Amy L. Hespenheide, Esq. of Shartsis, Friese & Ginsburg LLP. At trial Sarah called Enzo, Carla Korb, Gary Vandeweghe, Elizabeth Montagu, Jane Watson Steel, Elaine Seid and herself as witnesses. Trustee called Enzo and himself as witnesses.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.

FACTS

This case involves an unusual couple with an unusual lifestyle. Sarah and Enzo are both in their 70s and have been married for over 30 years. In the early years of their marriage, the Cecconis acted

---

[1] The Court will refer to Mr. and Mrs. Cecconi by their first names -- as the Cecconis' counsel did in the joint post-trial briefs -- for the sake of clarity, and means no disrespect in so doing.

MEMORANDUM DECISION
AFTER TRIAL

as many married couples do -- i.e., they lived together. At that point they lived in Venice, Italy at or near the Hotel Cipriani ("Cipriani") where Enzo worked as a general manager. The couple lived on Enzo's income. For the next twenty-two years, however, Enzo and Sarah maintained a strong marriage while pursuing very separate and independent lifestyles. Their separate finances were a key aspect of their relationship. About the same time Enzo decided to leave Venice and open up a restaurant in London, Sarah inherited a large portfolio of stock and oil royalties from her grandmother. Sarah did not want to live in London full-time and the couple started to live separate lives. Enzo primarily ran a restaurant in London and Sarah spent her time traveling with her mother, summering in Venice, Italy and wintering in Pebble Beach, California. Enzo and Sarah spent time with each other during the spring and fall, and saw each other on occasion during the summer and winter months.

The couple had a mutual, clear and strong understanding that Enzo's property from his business ventures were his and Sarah's inheritance was hers. Enzo and Sarah maintained separate finances and each provided for their own living expenses. The couple clearly understood and agreed that Enzo had his property in Europe and Sarah had her property in the United States, and they acted separately with regard to that property -- Enzo ran his restaurants and renovated property in London without input from Sarah. Sarah purchased a townhouse in Pebble Beach and purchased and constructed the Property without input from Enzo. It is due in large part to the unusual nature of their relationship that Sarah is able to

support her position so convincingly as the plaintiff in this lawsuit.

## A. Procedural Background

Enzo ran into financial difficulties in the 1990s. Insolvency proceedings were ordered against him in the United Kingdom on January 8, 2001. Trustee filed an ancillary proceeding under 11 U.S.C. § 304 in this Court on January 7, 2002. On January 15, 2003, Sarah filed a Complaint to Establish Purchase Money Resulting Trust against Enzo and Trustee. On February 21, 2003, Trustee filed his answer, counterclaim and cross-claim. Trustee amended his counterclaim and cross-claim on March 27, 2003, and June 18, 2003. Trial commenced on this matter on March 21, 2005 and continued on March 22, 23, 24, 28, 29, 30, and 31, 2005; April 1, 8, 12, 13, 25, and 26, 2005; and May 31, 2005. Post-trial briefing ended on November 22, 2006.

## B. Witnesses

i.) Enzo Cecconi -- Enzo is a citizen and resident of Italy and a debtor in insolvency proceedings in the United Kingdom.

ii.) Sarah Cecconi -- Sarah is the wife of Enzo.

iii.) Carla Korb -- Ms. Korb was the business and social secretary to Sarah's father, George Coleman, from August 1976 to February 1998.

iv.) Gary Vandeweghe -- Mr. Vandeweghe is an attorney and a friend of both of Sarah's parents. Mr. Vandeweghe also represented Sarah in relation to litigation over the Property filed by the Royal Bank of Scotland.

v.) Elizabeth Montagu -- Mrs. Montagu is Sarah's mother and the Dowager Duchess of Manchester ("Duchess").

vi.) Jane Watson Steel -- Ms. Steel is Sarah's friend.

vii.) Elaine Seid -- Ms. Seid is an attorney and represents Sarah in this litigation.

viii.) Trustee A.C. Spicer -- Trustee is a chartered accountant and the trustee in Enzo's insolvency proceedings in the United Kingdom.

## C. Pre-Marriage Background

### Enzo

Enzo was born and raised in Venice, Italy where he attended private school and gymnasium. Enzo wanted to work in the hotel and restaurant business since childhood, and started in that industry in 1956 when he was 20 years old. Enzo joined the Bauer Hotel, a deluxe hotel in Venice, in 1957. In order to improve himself, Enzo worked at the Bauer during the summer, then, during the winter months, he traveled to Germany, France, and London, among other places, to work and study seeking to develop his language skills so he could write a proper letter in English, French or German. Enzo speaks Italian, English, French, German and Spanish. In 1964, Enzo joined the Cipriani in Venice as an assistant manager and worked his way up to general manager of the hotel sometime prior to 1973. The Cipriani is a high-end hotel and caters to well-to-do guests. It is currently one of the top ten hotels in the world.

### Sarah

Sarah was born in Miami, Oklahoma to George and Elizabeth Coleman. Sarah comes from a very wealthy family -- her father was on the board of directors for Pennzoil -- and she has lived an unusual life. During Sarah's childhood, she spent the summers in Pebble Beach, California and the winters in Florida. Sarah started

MEMORANDUM DECISION
AFTER TRIAL                                    5

Case: 03-05024    Doc# 202    Filed: 04/17/07    Entered: 04/17/07 15:33:09    Page 5 of 12

attending boarding school in Wellesley, Massachusetts around eleven years of age and spent the first three years of high school in Middleburg, Virginia. During these years, Sarah spent the summers in Pebble Beach. Sarah spent her senior year of high school in Pebble Beach and graduated from a private high school in Monterey. Sarah developed an affinity for Pebble Beach during her childhood.

Sarah's parents divorced in 1957 or 1958 and, after that time, Sarah's mother, the Duchess, resided in Pebble Beach and Mr. Coleman resided in Palm Beach, Florida. Around this time, Sarah moved to Los Angeles and worked at two different jobs for a total of approximately one year -- her only employment in her life. Mr. Coleman paid the rent on Sarah's apartments in Los Angeles.

After the Duchess divorced Mr. Coleman, the Duchess married William Crocker and, after Mr. Crocker died, the Duchess married the Duke of Manchester. During most of the 1960s, and until Sarah married Enzo, Sarah traveled with the Duchess and lived in several places during the year. Sarah spent approximately four months a year in Pebble Beach, two or three months in New York City, three months in London, and some time in Kenya where the Duke of Manchester had property.

At this point in her life, Sarah did not have much income and received only a small monthly allowance. Sarah did own a townhouse in Sun Valley, Idaho ("Sun Valley Property") for approximately five years in the late 1960s and early 1970s. When Sarah owned the Sun Valley Property, she spent approximately five months a year in Sun Valley. To purchase the Sun Valley Property, Sarah borrowed $60,000 from a trust set up by Mr. Coleman's mother and father ("Trust"). The Trust was comprised of a wealthy stock portfolio

and oil royalties. Mr. Coleman was trustee for and managed the Trust for his mother. The funds Sarah borrowed were repaid to the Trust when the Sun Valley Property was sold.

<u>Enzo and Sarah</u>

Enzo first met Sarah at the Cipriani in 1973 when Sarah stayed at the hotel with the Duke and Duchess of Manchester. Enzo and Sarah married in May 1974. At the time he married, Enzo owned a car, was the general manager of the Cipriani, and had a small house in the country for his parents. When Sarah married Enzo, Mr. Coleman cut off Sarah's monthly allowance. The Cecconis lived at the Cipriani during their first year of marriage since part of Enzo's salary included an apartment inside the hotel. For the next three years, the Cecconis leased the apartment next door to the hotel, with the Cipriani paying the rent and all expenses of that apartment.

For most of the time Enzo was employed at the Cipriani, the Guinness family owned the hotel. At some point, the Cipriani was sold by the Guinness family and the new owner asked Enzo to remain as a director of the new company. But Enzo was ready to move on in his life and, in 1978, Enzo resigned from the Cipirani to open a restaurant in London.

**D. Enzo's Businesses**

Enzo opened Cecconi's restaurant in 1978. Cecconi's was an upper-end restaurant in the Mayfair district of London -- the district where the best shops and art dealers are located. Enzo testified that he chose to open his restaurant in London because he knew thousands of people there, mostly through his employment at the Cipriani. Enzo decided to open a restaurant rather than a

MEMORANDUM DECISION
AFTER TRIAL  7

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

hotel because he needed only a small investment for a restaurant and would have needed much more money to open a hotel. The Duchess guaranteed a $200,000 loan taken out by Enzo from the Bessemer Trust -- a firm that handled the Duchess' financial affairs -- to start the restaurant. Of the $200,000, $187,250 was distributed to Enzo Holdings B.V. and $12,750 to Enzo.

Enzo's relationship with the Royal Bank of Scotland ("Bank") also started in 1978. Enzo was introduced to the Bank by Lord Boyd of Merton of the Guinness family. The Bank had a branch office across the street from the London restaurant and Enzo would stop by that branch office on a daily basis. Enzo had a close relationship with the Bank's branch manager during the 1980s. Periodically the branch manager invited Enzo to lunch or they shared some whiskey. The daily relationship continued until the branch was closed in the early 1990s.

Enzo had three different accounts with the Bank -- two business accounts and a personal account. Enzo maintained an overdraft or credit facility on each of these accounts. The credit facility permitted Enzo to draw on a line of credit as needed. Although Sarah was a signatory on the checking portion of the personal account with the Bank, both Enzo and Sarah testified that Sarah did not use that account. There is no evidence that Sarah agreed to be liable for the credit facility on the personal account. The London restaurant used its credit facility for only two or three months because it made enough money early on to cover the expenses. Enzo did not recall telling anyone at the Bank in 1978 that he had borrowed $200,000, guaranteed by the Duchess, to start the London restaurant.

MEMORANDUM DECISION
AFTER TRIAL                             8

Cecconi Restauranteurs Limited ("CRL") owned the London restaurant. Enzo originally owned an 80 percent interest in CRL. The other 20 percent was owned by another Venetian, John Carlos Fabris, with whom Enzo worked at the Cipriani. Enzo bought out Mr. Fabris' interest in 1985 and had sole ownership of CRL thereafter. Sarah never held any interest in CRL. Enzo did not consult Sarah regarding any business decisions for the London restaurant.

One year after opening the London restaurant Enzo opened a "Cecconi's" restaurant in Paris. The Paris restaurant was financed by Pierre Gruet -- the owner of the Venice apartment that Enzo leased when Enzo worked at the Cipriani -- and a good customer of the Cipriani. Mr. Gruet agreed to finance the Paris restaurant until Enzo could pay Mr. Gruet back. Enzo did not consult Sarah regarding any business decisions for the Paris restaurant. Sarah testified that she first learned about the Paris restaurant from her next-door neighbor in Venice.

In addition to operating the London and Paris restaurants, Enzo had other income-producing pursuits. Enzo granted the right to open franchise restaurants in Istanbul, Turkey and Ocho Rios, Jamaica. Enzo also was a consultant for the Italian line of food at the department store Marks & Spencer and a consultant for British Airways to improve the food on the first class international routes. Enzo and Sarah both testified that they considered Enzo's interests in his businesses to be only Enzo's property.

**E. Post-1978 Marriage**

Sarah initially came to London with Enzo in the autumn of 1978 when Enzo started his restaurant, but Sarah did not want to live in

MEMORANDUM DECISION
AFTER TRIAL

London on a full-time basis. Sarah returned to a version of her pre-marriage lifestyle and the Cecconis entered into a type of "commuting marriage" from 1978 through 2000. In the winter, Sarah would travel to Pebble Beach, California with her mother and, in the spring, Sarah would travel through London on her way to Venice where Sarah would spend the summer.[2] Sarah would spend one to two months living with Enzo in London each fall and spring. When Enzo had the Paris restaurant, Sarah would spend the month of May with him in Paris.

When Sarah spent the summer in Venice, Enzo would take long weekends and travel to Venice by car or plane to spend time with her. Enzo was able to take such long weekends in July and August because his restaurants were slow on those days since his customers would spend time at their country homes from Thursday to Sunday. When Sarah was at Pebble Beach, Enzo spent about ten days during Christmas and New Year's and about two weeks at Easter with her. Periodically, if Enzo had to travel to Los Angeles for his consulting engagement with British Airways, he would make an excursion to Pebble Beach to spend a few days with Sarah.

**F. The Inheritance**

In 1979, Sarah's paternal grandmother passed away and Sarah inherited one-third of the Trust in 1980. Sarah was able to live comfortably on the income from the stock portfolio and oil royalties. Both Enzo and Sarah testified that Sarah's inheritance was her money and her money alone and Enzo had no interest in it.

---

[2] Enzo paid the rent on the Venice property -- where the Cecconis had lived while Enzo worked at the Cipriani -- for a few years after Enzo moved to London. The Duchess took over that lease in 1980 or 1981.

MEMORANDUM DECISION
AFTER TRIAL 10

Enzo testified that his belief is based in part on Italian law where the wife retains all of her property as her own.

Mr. Coleman offered to manage the Trust inheritance for Sarah and Sarah agreed. From the time Sarah received her inheritance share of the Trust until his death in 1997, Mr. Coleman managed and directed Sarah's finances for her with the assistance of professional lawyers, accountants and financial advisors. Mr. Coleman managed Sarah's finances from his business office in Florida. Ms. Korb was Mr. Coleman's business and social secretary from August 1976 until Mr. Coleman's death in July 1997. Ms. Korb remained at Mr. Coleman's Florida office until February 1998 to close up the office. In her capacity as Mr. Coleman's business and social secretary, Ms. Korb handled Mr. Coleman's books and contacted the various professional advisors with whom Mr. Coleman did business. Ms. Korb also maintained Sarah's financial records from 1980 through February 1998. Mr. Coleman had a power of attorney on behalf of Sarah. Mr. Coleman and/or Ms. Korb routinely completed whatever paperwork was needed to manage Sarah's financial affairs.

Since Mr. Coleman and Ms. Korb managed the details of Sarah's finances, Sarah did not have to and did not in fact pay particular attention to the details of her finances. Rather, Sarah spent most of her time traveling overseas. When Sarah needed spending money, Mr. Coleman and/or Ms. Korb would make the necessary arrangements with the appropriate bank or brokerage house on behalf of Sarah such as liquidating stocks or obtaining loans secured by Sarah's stocks. Mr. Coleman and/or Ms. Korb would arrange for documents to be delivered to Sarah wherever she was so that Sarah could sign

MEMORANDUM DECISION
AFTER TRIAL 11

Case: 03-05024   Doc# 202   Filed: 04/17/07   Entered: 04/17/07 15:33:09   Page 11 of 12

whatever documents required her signature. Sarah unconditionally trusted Mr. Coleman and Ms. Korb with her finances.

Mr. Coleman tried to advance Sarah's interest in managing her finances and had Sarah's best interests at heart. For example, if Sarah needed additional monies beyond her monthly dividends and royalties, Mr. Coleman preferred to have Sarah borrow funds from the First National Bank in Palm Beach, Florida ("Florida Bank") rather than liquidate her stock portfolio. This was because Sarah had a low basis in her stocks and liquidating the stocks caused Sarah to incur large capital gains taxes. The loans from the Florida Bank were secured by Sarah's shares of stock. In 1983, Mr. Coleman also recommended that Sarah establish a trust for estate planning purposes and to protect Sarah's assets. The Sarah C. Cecconi Trust was established in March 1984.

During the period when Mr. Coleman managed Sarah's financial affairs, Sarah did not reconcile her own checking account. Rather, Ms. Korb prepared monthly reports that showed the account balance for Sarah's checking account with the Florida Bank ("Florida Bank Account") as of the end of each month, and a list of the deposits and checks drawn for the monthly period covered by the statement. Starting in 1987, the monthly statements also included the current value of Sarah's portfolio and the cost basis. The monthly reports were prepared in the first few days of the following month and were sent to Sarah shortly after preparation. Sarah did not share these statements with Enzo and did not ask Enzo for financial advice.

Enzo and Sarah did not own any property together. Enzo and Sarah were both named on accounts each had at Wells Fargo Bank in Pebble Beach, but Sarah did not use Enzo's account and Enzo did not

MEMORANDUM DECISION AFTER TRIAL

12

Case: 03-05024 Doc# 202 Filed: 04/17/07 Entered: 04/17/07 15:33:09 Page 12 of 12